## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DEBORAH BOOTHE STEELE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:19-00728-N |
| | ) | |
| ANDREW M. SAUL, | ) | |
| *Commissioner of Social Security*, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Boothe Steele brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 12, 14) and those portions of the administrative record (Doc. 9) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

### I.   *Procedural Background*

Steele filed the subject DIB application with the Social Security

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 19). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 16, 20).

Administration ("SSA") on May 24, 2016. After it was initially denied, Steele requested, and on March 28, 2018, received, a hearing on her application with an Administrative Law Judge ("ALJ") of the SSA's Office of Disability Adjudication and Review. On August 15, 2018, the ALJ issued an unfavorable decision on Steele's application, finding her not entitled to benefits. (*See* Doc. 9, PageID.45-60).

The Commissioner's decision on Steele's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on August 1, 2019. (*See id.*, PageID.34-38). Steele subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir.

2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if

interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting

---

(applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').");  *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation

omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires that a claimant be "disabled," 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)

(per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Steele met the applicable insured status requirements through December 31, 2017, and that she had not engaged in substantial gainful activity since the amended alleged disability onset date of November 5, 2015.[7] (Doc. 9, PageID.50). At Step Two, the ALJ determined that Steele had the following severe impairments: degenerative joint disease of the knees; degenerative disc disease and scoliosis, status post cervical and lumbar

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)). Steele's application initially alleged a disability onset date of January 1, 2014, but at the ALJ hearing Steele voluntarily amended the onset date to November 5, 2015, as the ALJ acknowledged in the opening to her decision. (*See* Doc. 9, PageID.48). The Commissioner asserts that the ALJ's references to the initial alleged onset date in making certain findings later in her decision are scrivener's errors (*see* Doc. 14 n.2, PageID.475), and Steele's brief does not claim reversible error in this regard. Accordingly, the undersigned treats the ALJ's decision as being based on the amended onset date of November 5, 2015.

fusion with post-laminectomy syndrome; ischemic heart disease; a seizure disorder; hypothyroidism; hypertension; and borderline obesity.[8] (Doc. 9, PageID.50-52). The ALJ also found that Steele had the following medically determinable but non-severe mental impairments: depression, anxiety disorder, and chronic pain disorder. (*Id.*). At Step Three,[9] the ALJ found that Steele did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 9, PageID.104-105).

At Step Four,[10] the ALJ determined that Steele had the residual functional

---

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. §

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a)[11]

except no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs;

occasional balancing, stooping, kneeling; no crouching, crawling, or operation of foot

---

404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

11 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "sedentary" work are as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

controls; occasional overhead reaching; occasional exposure to extreme heat, extreme cold, dust, fumes, odors, gases; and no exposure to vibration, unprotected heights or hazardous machinery." (Doc. 9, PageID.54-58). Based on the RFC and the testimony of a vocational expert,[12] the ALJ determined that Steele was able to perform past relevant work as a receptionist and office manager (Doc. 9, PageID.58-59), thus pretermitting the need to proceed to Step Five. Accordingly, the ALJ found that Steele was not disabled under the Social Security Act. (*Id.*, PageID.59-60).

## IV.   *Analysis*

### A.   Medical Opinions

Steele first argues that the ALJ erred by not giving substantial weight to the medical opinion of her treating physician, Ellis Allen, M.D., and in giving greater weight to the opinion of a non-examining, state agency reviewing medical consultant, M. Bijpuria, M.D. No reversible error has been shown.[13]

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the

---

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[13] Since Steele's first and third claims of error both concern the propriety of the ALJ's consideration of medical opinions, the undersigned addresses those claims together.

claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[14]

---

[14] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject application. *Compare* 20 C.F.R. § 404.1520c

The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

"An administrative law judge may not arbitrarily reject uncontroverted

_____

(applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017).

medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), and failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

The record contains two medical opinions from Dr. Allen, one completed August 29, 2016 (Doc. 9, PageID.327-328), and another completed February 6, 2018 (*id.*, PageID.438-439). The ALJ summarized the 2016 opinion as limiting Steele "to sedentary work with sitting for 4 hours and standing or walking for 1 hour in a normal 8-hour workday[,]" with the additional determination that "pain was distracting to adequate work but her medication side effects were not a problem in most instances." (*Id.*, PageID.57). The ALJ summarized the 2018 opinion as "limiting [Steele] to sitting for 1 hour and standing or walking for less than 1 hour in a normal 8-hour workday…" (*Id.*).

Prior to weighing the medical opinions of record, the ALJ provided a chronological discussion of the objective medical evidence. (*See* Doc. 9, PageID.55-56). The ALJ then assigned only "partial weight" to Dr. Allen's opinions, finding that "Dr. Allen relied heavily on [Steele]'s allegations, reports, did not treat her extensively for musculoskeletal impairments[,]" and that his opinions were "not persuasive or supported by objective medical findings and consistent longitudinal treatment records..." (*Id.*). This was a sufficient articulation of "good cause." *See Winschel*, 631 F.3d at 1179 ("good cause" exists where "treating physician's opinion was not bolstered by the evidence"); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (ALJ properly discounted treating physician's opinion after finding it to be "inconsistent with his own treatment notes, unsupported by the medical evidence, and appear[ing] to be based primarily on [the claimant]'s subjective complaints of pain"); 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain.").[15]

---

[15] It does raise an eyebrow that the ALJ's stated reasons for partially discounting

The ALJ elaborated:

> For example, x-rays of [Steele's] knees showed degenerative joint disease (DJD) with loss of medial joint space with recommended treatment including intra-articular injections (Ex. 11F/4). []However, the file contains significant gaps in treatment notes with Dr. Allen, with no medical evidence of record (MER) from June of 2016 until August 2017, and no MER from November of 2017 through February of 2018. Said treatment gaps suggests [sic] her symptoms are not as persistent or limiting as alleged as her pain management treatment has been sporadic. []Moreover, the majority of her physical examinations demonstrate normal gait, and her motor and sensory skills were grossly normal (Ex. 2F). She retained a full range of motion (ROM) in her extremities are [sic] straight leg raise (SLR) tests were negative with normal sensation and motor function in her lower extremities (id. at 3). She underwent an exercise test on a treadmill for 8 minutes, achieved 8.8 METS, but [Steele] terminated the session due to reported fatigue and shortness of breath (sob) (Ex. 13F/27).

(Doc. 9, PageID.57-58).

Steele disputes the ALJ's citation to gaps in her treatment with Dr. Allen. The undersigned agrees with Steele that the three-month gap between November 2017 and February 2018 was not significant, as Dr. Allen's treatment notes from February 2014 through March 2016 show that Steele's visits were generally three months apart during that period. As for the noted gap between June 2016 and August 2017, Steele points out that she was receiving treatment from other specialists for her pain during this time, including undergoing back surgery.

---

Dr. Allen's opinions are taken almost verbatim from the report of Dr. Bijpuria (*see* Doc. 9, PageID.330), who also, as the ALJ noted, "rejected" Dr. Allen's opinions. (*See id.*, PageID.57). Nevertheless, Steele does not claim reversible error on this point in her brief. Moreover, the ALJ's decision adequately indicates that she independently reviewed the record as a whole, the stated reasons constitute "good cause" under Eleventh Circuit precedent, and, as will be explained, substantial evidence supports those reasons.

However, the record indicates that Dr. Allen was Steele's primary "pain management" physician, and the other physicians who treated Steele during the 2016-2017 gap repeatedly acknowledged Dr. Allen as such, with one even writing him a letter providing an update on Steele's progress post-surgery. Thus, as the ALJ reasonably noted, a fourteen-month gap in Steele's "pain management treatment" undermined Dr. Allen's opinion as to completely disabling limitations.

Other substantial evidence also supports the stated "good cause" to reject the more disabling limitations assigned in Dr. Allen's opinions. The undersigned notes that Steele largely cites to records from other physicians in challenging the ALJ's determination that Dr. Allen "relied heavily" on Steele's subjective complaints, and Steele's discussion of the objective medical evidence is notably light on details regarding most of Dr. Allen's treatment notes. More importantly, though, the ALJ's view that the record as a whole does not bolster the more severe limitations imposed by Dr. Allen's opinions is reasonable.

Steele's brief provides her own chronological overview of the objective medical evidence, for obvious reasons highlighting portions more favorable to her claim of disability. (*See* Doc. 12, PageID.454-460). However, even that overview does not substantially undermine the ALJ's decision. To the extent it highlights that Steele had various medical impairments that could be expected to cause pain, and for which she was seeking treatment, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. Certainly, the ALJ

believed the evidence supported significant limitations in Steele's ability to work, as evidenced by the fact that the RFC limited Steele to a reduced range of sedentary work, the least demanding work classification recognized by the Social Security regulations. However, the ALJ, noting that Steele's physical exams produced largely normal findings such as normal gait, normal sensory and motor skills, and full range of motion in her extremities, reasonably concluded that the evidence did not support Dr. Allen's opinions of disabling limitations. None of the evidence discussed in Steele's brief overwhelmingly bolsters a contrary conclusion. While the record evidence could also reasonably provide substantial support for Dr. Allen's opinions in full, Steele has not convinced the undersigned that the record evidence so preponderates in favor of that conclusion that the ALJ's decision is not due deference. *See Ingram*, 496 F.3d at 1260 (court must affirm an ALJ's factual finding that is supported by substantial evidence, even if the evidence preponderates against it); *Adefemi*, 386 F.3d at 1029 ("[E]ven if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision."). Accordingly, the ALJ committed no error in assigning only partial weight to Dr. Allen's opinions.

The ALJ noted that non-examining state agency reviewer Dr. Bijpuria "opined [Steele] could perform light work with no climbing of ladders, ropes, or scaffolds, occasional postural activities and overhead reaching[,]" and that "she must avoid hazards…" (Doc. 9, PageID.57). The ALJ assigned "significant weight" to Dr. Bijpuria's opinion. (*Id.*, PageID.58). Pointedly, the ALJ made clear that she

was giving "greater weight to Bijpuria" than the "partial weight" given to Dr. Allen's opinions, purportedly because Dr. Bijpuria "reviewed [Dr. Allen's] report in context with other medical evidence[,]" while "Dr. Allen did not adequately support his opinions with explanation or pertinent clinical evidence..." (*Id.*).

The ALJ's explanation for the weight given to Dr. Bijpuria's opinion is inartful. The mere fact that Dr. Bijpuria reviewed Dr. Allen's opinion in conjunction with other record evidence is not, by itself, good grounds to give that opinion more weight than Dr. Allen's. Given that non-examiners can only give opinions by first reviewing the medical evidence, such an approach would eviscerate the general rule giving precedence to treating physicians' opinions, and is also inconsistent with the settled law of this circuit that "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians..." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).

Nevertheless, as noted above, the ALJ had adequate "good cause" to assign less than significant weight to Dr. Allen's opinions. In such situations, an ALJ may then properly give more credit to the opinions of non-examining physicians. *See Jones*, 810 F.2d at 1005 ("Jones contends that the ALJ erred by crediting the reports of non-examining, non-treating physicians. It is not improper, however, for an ALJ to consider such reports—as long as the opinion of the treating physician is accorded proper weight. And, as we stated before, the Secretary in this case stated 'good cause' for not according Jones's treating physician's opinion the 'substantial

weight' normally required. Thus, the Secretary did not err."); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished) ("Here, there is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians."); *Williams v. Berryhill*, No. CV 17-00346-N, 2018 WL 3236052, at *6 (S.D. Ala. July 2, 2018) ("if an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record" (quotation omitted) (citing cases)). Moreover, in noting that Dr. Bijpuria's opinion "was partially consistent with the medical evidence" and that the "record as a whole reasonably supports the sedentary RFC" (*id.*, PageID.57-58), the ALJ sufficiently indicated that she considered Dr. Bijpuria's opinion in conjunction with the other record evidence in assigning it weight, and found that it better supported Dr. Bijpuria's opinion than Dr. Allen's. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); 20 C.F.R. § 404.1513a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to § … 404.1527, … because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Thus, the fact that Dr. Bijpuria did not have the chance to consider

additional evidence that was entered into the record does not detract from the ALJ's decision regarding the weight given to Dr. Bijpuria's opinion.[16] Accordingly, Steele has not persuasively shown reversible error in the ALJ's consideration of the medical opinions of record.

## B.     Pain

Steele's last claim of error is that the ALJ failed to appropriately consider her "pain, as well as her chronic pain disorder, in assessing her ability to engage in her past work, which was semi-skilled and skilled." (Doc. 12, PageID.465). More specifically, she argues that the ALJ erred in finding that her chronic pain disorder was a non-severe impairment at Step Two, and in rejecting her subjective testimony regarding the effects of her pain.

"At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Accordingly, the Eleventh Circuit has repeatedly held that where, as here, an ALJ found at least one severe impairment at Step Two and proceeded to the next steps of the sequential evaluation, any error in not classifying other impairments as

---

[16] While Steele correctly notes that "[n]on-examining physicians' opinions … do not alone constitute substantial evidence[,]" *Schink*, 935 F.3d at 1260, here the ALJ also relied on the partial weight given to Dr. Allen's opinions, as well as substantial objective evidence in the record.

"severe" is harmless.[17] Thus, any error in the ALJ's failure to classify Steele's chronic pain disorder as "severe" at Step Two is harmless.

A claimant may "attempt[] to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221,

---

[17] *See e.g.*, *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018) (per curiam) (unpublished) ("Step two is a 'filter' which eliminates groundless claims. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). To meet his burden at this step, Mr. Wood only had to show 'at least one' severe impairment. *See id.* He met his burden and the ALJ appropriately proceeded to the next step of the sequential analysis. Therefore, any error in not finding additional severe impairments did not harm Mr. Wood."); *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 514 (11th Cir. 2017) (per curiam) (unpublished) ("In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event."); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492 (11th Cir. 2016) (per curiam) (unpublished) ("[E]ven if Medina's other conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."); *McCormick v. Soc. Sec. Admin., Com'r*, 619 F. App'x 855, 858 (11th Cir. 2015) ("[S]tep two is merely a filter, and any error in considering an additional impairment is harmless since it does not factor into the determination of disability." (citing *Jamison*, 814 F.2d at 588)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("Based on our precedent and the regulations, … it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010) (per curiam) (unpublished) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires."). *But see Schink*, 935 F.3d at 1268 (noting determination that substantial evidence did not support ALJ's finding the claimant's mental impairments to be non-severe "could be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered Schink's mental impairment when assessing his RFC, and reached conclusions about Schink's mental capabilities supported by substantial evidence[,]" but finding reversible error where ALJ's RFC only considered claimant's physical abilities and impairments).

1223 (11th Cir. 1991) (per curiam). "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, … the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms. Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the district court … to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citations and quotations omitted).[18]

> If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used

---

[18] *See also* Social Security Ruling (SSR) 16-3P, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

> to relieve her pain or symptoms; and (7) other factors concerning the
> claimant's functional limitations and restrictions due to her pain or
> symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the
> claimant's statements regarding her symptoms in relation to all other
> evidence, and consider whether there are any inconsistencies or
> conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831–32 (11th Cir. 2013) (per
curiam) (unpublished). "[C]redibility determinations are the province of the ALJ,
and [a court] will not disturb a clearly articulated credibility finding supported by
substantial evidence…" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782
(11th Cir. 2014) (per curiam) (citation omitted).

The ALJ found that Steele's "medically determinable impairments could
reasonably be expected to produce [her] alleged symptoms[,]" but found "no
persuasive corroborating evidence of duration, frequency, intensity of symptoms
and limitations alleged as disabling." (Doc. 9, PageID.55). In justifying this
credibility determination, the ALJ found that "[n]o objective evidence of
physiological abnormality reasonably expected to result in the degree alleged[, and
that r]outine conservative treatment and recommendations suggest symptoms not
as limiting as alleged." (*Id.*).

Steele argues that her subjective complaints of pain are supported by Dr.
Allen's medical opinions, but, as explained above, the ALJ correctly discounted the
more disabling aspects of those opinions. Steele also disputes the ALJ's judgment in
deeming her treatment "routine" and "conservative," but as Steele herself notes in
her brief, James Spain, M.D., who examined Steele on September 19, 2016, also
deemed the treatment she had been receiving to be "conservative." (*Id.*,

PageID.377). True, Dr. Spain made this observation in opining that Steele had "failed conservative care" and referring her to the spine surgeon that would go on to perform her back surgery (*id.*), but records indicate that Steele's pain treatment after the surgery did not substantially differ from what she had undergone prior to the surgery.[19]

The ALJ also, appropriately, considered Steele's activities of daily living, such as her ability "to attend to her personal care needs, listen to music, read books and magazines, wash the dishes, watch television, perform light housework, prepare and cook full meals, and drive a car[,]" as well as "go shopping in stores, attend doctor's appointments, visit with friends and family, [and] attend church services…" (Doc. 9, PageID.57). While certainly modest, these activities further cut against Steele's subjective complaints of disabling pain. Finally, the ALJ also compared Steele's subjective complaints to the objective medical evidence, finding that it did not fully support those subjective complaints in much the same way it did not fully support the most disabling aspects of Dr. Allen's opinions. In sum, the ALJ clearly articulated a credibility finding that is supported by substantial evidence. Thus,

---

[19] *Storey v. Berryhill*, 776 F. App'x 628 (11th Cir. 2019) (per curiam) (unpublished), to which Steele cites in claiming that the ALJ mischaracterized her treatment records, is distinguishable. There, the Eleventh Circuit found that "the ALJ mischaracterized the records as showing a history of 'routine and conservative' [orthopedic] treatment[ because t]he ALJ relied on portions of the physical examination notes and diagnostic testing that were not relevant to Storey's orthopedic impairments[,]" such as statements from an oncologist, and records that did not accurately reflect the nature and severity of her Storey's orthopedic impairments. 776 F. App'x at 636. Here, Steele does not argue that the ALJ relied on irrelevant or incomplete records in deeming her treatment as "conservative." Moreover, unlike in *Storey*, the ALJ's determination was echoed by at least one medical professional.

this Court has no authority to disturb it.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Steele's application for benefits is therefore due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Steele's May 24, 2016 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 23rd day of December 2020.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**